IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN DESMOND,<br><br>    Plaintiff,<br><br>v.<br><br>BLUEBIRD BIO, INC. AND THE PRUDENTIAL INSURANCE COMPANY OF AMERICA,<br><br>    Defendant. | Civil Action No. |

**COMPLAINT FOR RECOVERY OF PLAN BENEFITS AND FOR THE ENFORCEMENT OF RIGHTS UNDER ERISA**

Plaintiff, John Desmond, represents to the Court the following to obtain equitable relief under 29 U.S.C. § 1132(a)(3) from Defendants' failure to discharge their fiduciary duties with the care, skill, prudence, and diligence required under 29 U.S.C. § 1104(a)(1)(B).  Specifically, Defendants breached their fiduciary duties by misrepresenting to Plaintiff he had life insurance coverage under an Employee Welfare Benefit Plan offered by Defendants, which could be converted to an individual life insurance policy upon the end of his employment with Defendant bluebird bio, Inc.  These misrepresentations reasonably caused Plaintiff to believe that he had valid and enforceable life insurance coverage when departing from the company and caused him to unknowingly forfeit the opportunity to obtain valid and enforceable life insurance coverage by trying to return to work before the end of his employment.  Because of Defendants' misrepresentations, breaches, errors and omissions, Plaintiff has suffered damages equal to the life insurance coverage he was led to believe he had.

1

**JURISDICTION AND VENUE**

1. This Court's jurisdiction is invoked under 28 U.S.C. § 1337 and 29 U.S.C. § 1132(e) (ERISA § 502(e)). Plaintiff's claim "relates to" "employee welfare benefits plan[s]" as defined by ERISA, 29 U.S.C. § 1001 et seq. and the subject Benefit Plan constitutes "plan[s] under ERISA."

2. The ERISA statute, at 29 U.S.C. § 1133, and Department of Labor regulations, at 29 C.F.R. § 2560.503-1 provide a mechanism for administrative or internal appeal of benefits denials. Because Plaintiff's claims arise under 29 U.S.C. § 1132(a)(3), Plaintiff asserts the appeal mechanisms are not applicable to his claim. To the extent such appeal mechanisms are held applicable to Plaintiff's claims under 29 U.S.C. § 1132(a)(3), those avenues of appeal have been exhausted and this matter is now properly before this Court for judicial review.

3. Venue is proper within the District of Massachusetts under 29 U.S.C. § 1132(e)(2).

**PARTIES**

4. Plaintiff, John Desmond ("Plaintiff"), was at all relevant times a resident of Norfolk, Massachusetts.

5. Upon information and belief, Defendant bluebird bio, Inc. ("Bluebird"), is a bio-medical manufacturing company and the plan administrator of the bluebird bio Employee Welfare Benefit Plan (the "Plan"), which provides plan participants with different benefits, including basic life insurance coverage and supplemental life insurance coverage. Defendant Bluebird is located in Cambridge, Massachusetts, and may be served with process through its registered agent for service of process Corporation Service Company, at 84 State Street, Boston, MA 02109.

6. Defendant The Prudential Insurance Company of America ("Prudential") is a foreign insurance company authorized to transact the business of insurance in the Commonwealth of Massachusetts, and may be served with process through the Commissioner of Insurance of the Commonwealth of Massachusetts under Massachusetts General Laws, Chapter 175, Section 154.

7. Upon information and belief, Defendant Prudential is the party obligated to provide coverage under Group Life Insurance Policy No. 13-3680878 issued by Prudential to Bluebird. ("Policy").  Upon information and belief, life insurance coverage under Group Life Insurance Policy No. 13-3680878 became effective on or around January 1, 2020.

## **FACTS**

8. Plaintiff, John Desmond, was employed by Bluebird as the Vice President of Facilities and Real Estate until he departed from the company on or around July 3, 2020.

9. By virtue of his employment, Plaintiff was at all relevant times a participant in the Plan and had coverage under Bluebird's Group Life Insurance Plan, which became insured by Defendant Prudential on or around January 1, 2020.

10. Bluebird's Group Life Insurance Plan provides participants with Basic Employee Term Life Coverage equal to 200% of a participant's annual earnings ("Basic Coverage"), and provides participants with the right to obtain Optional Employee Term Life Insurance without evidence of insurability in an amount up to $100,000 ("Supplemental Coverage").  Supplemental Coverage under the Bluebird Life Insurance Plan is contingent on a participant's payment of additional insurance premiums.

11. Bluebird's Group Life Insurance Plan also provides participants with a "Conversion Privilege," which provides that when a participant's employment ends, the

participant may convert both his or her Basic and Supplemental Coverage to an individual life insurance contract. The policy further states that evidence of insurability is not required to convert a participant's coverage.

12. In early 2019, Plaintiff was diagnosed with Stage 4 Prostate Cancer and later that year filed for short-term and long-term disability under Bluebird's Group Disability Plans because his cancer and treatments were substantially interfering with his ability to work. Plaintiff remained out on disability from June 2019 through July 3, 2020, when he ended his employment with Bluebird.

13. When Prudential's life insurance coverage took effect on or around January 2020, Plaintiff applied for and obtained both Basic and Supplemental Coverage under Prudential's Group Life Insurance Policy. Plaintiff thereafter and at all relevant times paid the additional premiums for his Supplemental Coverage.

14. In April of 2020, around the time Plaintiff's cancer treatment was completed, Plaintiff was deciding whether or not to try returning to active work with Bluebird. He delayed returning to work at that time, and asked Bluebird to confirm he still had Basic and Supplemental Life Insurance Coverage under the Plan and Policy.

15. By email, Bluebird's confirmed that Plaintiff's Basic and Supplemental Coverage remained in effect. Specifically, Bluebird told Plaintiff: "[t]he value of your life insurance through Prudential is, as you laid out, 2X capped at 500 + 100= $600k."

16. Plaintiff ultimately decided to not try returning to work because of ongoing health concerns and instead end his employment with Bluebird. His termination date was set for July 3, 2020.

17. Before his termination date, Plaintiff contacted Bluebird via email and asked for assistance and information about continuing his life insurance coverage following his departure from the company. In the email, Plaintiff explained that he wanted to continue his life insurance coverage because he planned on entering into a viatical settlement with American Life Fund.

18. Bluebird again confirmed that he continued to have Basic and Supplemental Coverage insured by Prudential and confirmed he could convert that coverage to an individual policy, which would remain effective following his departure from the company. Bluebird also attached completed conversion application forms to the email, and instructed Plaintiff to sign and submit the forms to Prudential to initiate the conversion process.

19. After Bluebird confirmed that he could convert his Basic and Supplemental Coverage under the Plan and Policy, Plaintiff submitted his conversion applications and ended his employment with Bluebird on July 3, 2020.

20. By letter dated August 26, 2020, Prudential informed Plaintiff that his request to convert his Basic Coverage had been approved and that he had been issued a Prudential Guaranteed Life Policy with an insurance value of $552,000 that became effective on August 4, 2020. *See* Prudential Approval Letter attached as Exhibit A.

21. Prudential had not yet issued a decision on Plaintiff's request to convert his $100,000 Supplemental Coverage under the Plan and Policy. Prudential indicated via email that its decision was contingent on its legal team's review of the irrevocable trust documents for the Policy.

22. On September 1, 2020, Prudential informed Bluebird by email it was reversing its earlier approval and rescinding Plaintiff's Basic and Supplemental Coverage under the Policy. For the first time, Prudential asserted that Plaintiff's Basic and Supplemental Coverage was

never effective because he had not returned to active work before the end of his employment with Bluebird.

23. Bluebird informed Plaintiff of Prudential's decision to rescind his Basic and Supplemental Coverage by email. In the email, Bluebird discussed the unfairness of Prudential's decision and assured Plaintiff it would take steps on his behalf to have Prudential reinstate his coverage.

24. Despite extended communications with Bluebird, Prudential ultimately upheld its revocation and again stated that because Plaintiff had not returned to active employment before departing from Bluebird, Plaintiff's Basic and Supplemental Coverages never became effective and could not be converted to individual policies. Prudential sent a letter to Plaintiff dated October 1, 2020, confirming its revocation. *See* Prudential Denial Letter, attached as Exhibit B.

25. By email, Bluebird also informed Plaintiff of Prudential's ultimate determination and explained its belief that had Plaintiff returned to active work before his departure from the company, his Basic and Supplemental Coverages would not have been disputed.

26. At no point between January 2020-when Plaintiff enrolled for Basic and Supplemental Coverage under the Plan and Policy- and July 3, 2020- when Plaintiff terminated employment with Bluebird- did Defendants inform Plaintiff that his coverages with Prudential were not effective.

27. At no point between January 2020 and July 3, 2020, did Defendants inform Plaintiff that in order for his coverages to be effective and eligible for conversion he needed to return to active work before departing from the company.

28. At no point between January 2020 and July 3, 2020, did Defendants indicate their affirmations of coverage could be incorrect or that Plaintiff should consult the Plan or Policy for correct information.

29. Rather, all of Defendants' communications and conduct towards Plaintiff during that time misrepresented that Plaintiff's Basic and Supplemental Coverages under the Plan and Policy were in full force and effect, and caused Plaintiff to believe he had complied with all requirements to have effective coverage under the Plan.

30. Plaintiff at all relevant times relied on Defendants' representations that he had Basic and Supplemental Coverage under the policies when he ended his employment with Bluebird without trying to return to active employment first.

31. Defendants did not inform Plaintiff of any issues with the effectiveness of his coverage until September 2020, nearly two months after his employment with Bluebird had ended.

32. Had Plaintiff known that he had to return to active work before his departure in order for his Basic and Supplemental Coverages to take effect, he would have tried to return to active work.  *See* Declaration of John Desmond, attached as Exhibit C.

33. According to Prudential, had Plaintiff returned to active work for a single day, his Basic and Supplemental Coverages would have taken effect.

### FIRST CAUSE OF ACTION FOR EQUITABLE RELIEF AGAINST ALL DEFENDANTS PURSUANT TO 29 U.S.C. §§ 1132(a)(3) FOR BREACH OF FIDUCIARY DUTY TO ACCURATELY CONVEY MATERIAL INFORMATION ABOUT THE PLAN

Plaintiff incorporates the allegations contained in the previous paragraphs as if fully stated in this cause of action and says further that:

34. Defendants Bluebird and Prudential are fiduciaries of the Plan, and owe fiduciary duties to all Plan participants and beneficiaries, including Plaintiff.

35. Communicating with plan participants and beneficiaries, as well as processing benefit requests and similar inquiries, constitute gatekeeping functions that are fiduciary in nature as a matter of law.

36. As administrators of an ERISA Employee Welfare Benefit Plan, Bluebird and Prudential owed Plaintiff duties as a fiduciary, including a duty to accurately convey material information to plan participants when interpreting plan documents and giving advice.

37. Bluebird and Prudential were required to discharge their fiduciary duties with the care, skill, prudence, and diligence of a prudent person. *See* 29 U.S. Code Section 1104(a)(1)(B).

38. Defendants breached their fiduciary duties to Plaintiff through the conduct described herein, including Defendants' failure to accurately inform Plaintiff about the status of his life insurance coverages despite Plaintiff's inquiries and stated intent to convert these coverages when ending his employment with Bluebird.

39. Additionally, Defendants provided Plaintiff with inaccurate information.

40. Defendants knew or should have known that failing to provide Plaintiff with complete and accurate information about his life insurance coverages, or providing him with inaccurate information, would cause him to suffer actual harm.

41. ERISA § 502(a)(3) provides that a civil action may be brought:

> (3) by a participant, beneficiary, or fiduciary
> (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or
>
> (B) **to obtain other appropriate equitable relief**
> (i) to address such violations or

(ii) to enforce any provision of this subchapter or the terms of the plan…

42. Accordingly, § 502(a)(3) allows Plaintiff to bring a claim against Defendants for breach of fiduciary duty. Because of Defendants' breach of fiduciary duty, Plaintiff is entitled to recover appropriate equitable relief.

43. A fiduciary under ERISA can be surcharged under § 502(a)(3) upon a showing of actual harm by the plan participant or beneficiary.

44. Plaintiff relied on Defendants' misrepresentations that his coverages were effective and eligible for conversion when ultimately deciding not to try returning to work. Plaintiff's reliance was detrimental because the misrepresentations led him to mistakenly believe that he had met all requirements for life insurance coverage under the Plan before ending his employment.

45. Because of Defendants' breach of fiduciary duties, including its material misrepresentations, Plaintiff suffered actual harm equal to the Basic and Supplemental Coverages under the Plan.

## PRAYER FOR RELIEF

WHEREFORE. Plaintiff requests this Court grant him the following relief in this case:

1. A finding in favor of Plaintiff against all Defendants;

2. A finding that Defendants are estopped from enforcing the terms of the Plan as written as pertains to Plaintiff's eligibility, due to their misrepresentations and failure to accurately inform the participant about his compliance with the terms of the Plan;

3. Reformation of the terms of the Plan to allow Mr. Desmond to have the Basic and Supplemental coverage he enrolled in and paid premiums for, as an equitable remedy for Defendants' breach of their fiduciary duties;

9

4. Impose a surcharge, or other form of appropriate equitable relief, on Defendants requiring them to make Plaintiff whole for the value of Basic and Supplemental Coverages Plaintiff would have had under the terms of the Plan;

5. Prejudgment and post judgment interest;

6. An Order requiring Defendants to pay any other benefits available under the Plan or available by operation of other employee benefit plans, to the extent applicable;

7. Plaintiff's reasonable attorney fees and costs pursuant to ERISA § 502(g); and

8. Such other relief as this court deems just and proper.

Dated: January 5, 2022

                Respectfully submitted,

BY: /s/ M. Katherine Sullivan
M. Katherine Sullivan. BBO No. 649239
Law Office of Katherine Sullivan, LLC
945 Concord Street
Framingham, MA 01701
Tel.: (508) 620-5387
Fax:(423) 634-2505
kate@sullivandisabilitylaw.com

ERIC BUCHANAN & ASSOCIATES, PLLC

BY: /s Hudson Ellis
Hudson Ellis*
Noah A. Breazeale*
414 McCallie Avenue
Chattanooga, TN 37402
Tel.: (423) 634-2506
Fax: (423) 634-2505
ellish@buchanandisability.com
nbreazeale@buchanandisability.com
*Motions for admission pro hac vice filed contemporaneously